IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AMERICAN SOUTHERN                *
INSURANCE COMPANY,
                                 *
    Plaintiff,
                                 *
v.                                   Civil Action No. GLR-16-3628
                                 *
DLM, LLC, et al.
                                 *
    Defendants.
                                 *

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants' Motion to Dismiss Amended Complaint (ECF No. 18). The Motion is fully briefed and ripe for disposition. No hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons that follow, the Court will deny the Motion.

## I. BACKGROUND

This action arises out of a surety arrangement between Plaintiff American Southern Insurance Company ("ASIC") and Defendants. ASIC is a "national surety company engaged in the business of construction and surety bonding." (Am. Compl. ¶ 1, ECF No. 15). ASIC requires indemnity from all parties seeking bonding. (Id. ¶ 10). In September 2004, Defendants William R. Luther, Jr., Sharon L. Babcock, and Brian E. Fromme (the "Original Indemnitors") sought bonding from ASIC and executed a General Agreement of Indemnity in favor of ASIC (the "2004 GAI") in exchange for ASIC issuing surety bonds on behalf of Defendant DLM, LLC ("DLM"). (Id.).

In July 2005, DLM executed two public works agreements (the "Agreements") with the Department of Public Works of Cecil County, Maryland ("Cecil County"). (Id. ¶¶ 11, 12). In the first, DLM agreed to build roads and storm drains for the Mendenhall Square development (the "Construction Agreement"). (Id. ¶ 11). In the second, DLM agreed to inspect and maintain storm water management facilities at Mendenhall Square (the "Inspection and Maintenance Agreement"). (Id. ¶ 12). To secure performance of the Agreements, ASIC issued two surety bonds (the "Bonds") on behalf of DLM (the "principal"), naming Cecil County as the "obligee."[1] (Id. ¶¶ 13-15).

In November 2008, in exchange for ASIC renewing and continuing the Bonds, Defendants Bluffs at Big Elk II, LLC, DLM, Vickie E. Luther, and the Original Indemnitors (collectively, the

---

[1] The Court uses the terms "surety," "subrogee," "principal," and "obligee" throughout this Opinion. To avoid any confusion, the Court notes that it uses these terms based on their definitions in the context of surety bonds. In Maryland, "[a] surety bond is a three-party agreement between a principal obligor, an obligee, and a surety." Atl. Contracting & Material Co. v. Ulico Cas. Co., 844 A.2d 460, 468 (Md. 2004) (citing Gen. Motors Acceptance Corp. v. Daniels, 492 A.2d 1306, 1309 (Md. 1985)). When a surety issues a performance bond, like the Bonds in this case, "the surety assures the obligee that if the principal fails to perform its contractual duties, the surety will discharge the duties itself, either by performing them or paying the obligee the excess costs of performance." Id. (citing Daniels, 492 A.2d at 1309). A subrogee is a party that exercises the right of subrogation and "is substituted for another in having a right, duty, or claim; esp[ecially], the person or entity that assumes the right to attempt to collect on another's claim against a third party by paying the other's claim-related debts or expenses." Subrogee, Black's Law Dictionary (9th ed. 2009).

2

"Indemnitors" or "Defendants") executed a separate indemnity agreement (the "2008 GAI"). (Id. ¶ 16). The terms of the 2008 GAI are identical to those of the 2004 GAI. (Id.); (compare ECF No. 1-5 at 2–6 with ECF No. 1-5 at 7–13). Both the 2004 and 2008 GAI (the "GAIs") require the Indemnitors to "indemnify and save [ASIC] harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which [ASIC] may pay or incur in consequence of having executed, or procured the execution of [the Bonds]." (ECF No. 1-5 at 2, 7). Under the GAIs, the Indemnitors agreed that if Cecil County asserted breach, delay, or default under the Agreements, ASIC had the right "to take possession of any part or all of the work under [the Agreements], and at the expense of the . . . Indemnitors to complete or arrange for the completion of the same." (Id. at 4, 9). The Indemnitors further agreed that if ASIC completed or arranged for the completion of work under the Agreements, the Indemnitors would pay for ASIC's losses and expenses. (Id. at 4, 9).

In November 2009, DLM and other related entities sought protection under Chapter 11 of the United States Bankruptcy Code. See In re Gemcraft Homes, Inc., No. 09-31696-NVA (Bankr.D.Md. closed June 30, 2011). In September 2010, the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court") confirmed DLM's Third Amended Joint Plan of Reorganization (the "Reorganization Plan"). (See ECF No. 18-2). The Reorganization

3

Plan provided that with the exception of the liabilities under the contracts that DLM expressly agreed to assume, all liabilities that arose before the Bankruptcy Court confirmed the Reorganization Plan were deemed "fully satisfied, discharged, waived and released." (Id. at 14, 22). DLM expressly agreed to assume continued liability for the Bonds and the Agreements -- but not the GAIs. (See ECF No. 18-3 at 5).

In November 2014, Cecil County notified ASIC that DLM defaulted under the Agreements by failing to build roads and storm drains and inspect private storm water facilities at Mendenhall Square. (Am. Compl. ¶¶ 22, 23). In response, ASIC engaged a construction consultant and an attorney to investigate the outstanding construction work at Mendenhall Square. (Id. ¶ 26). Following the investigation, ASIC paid Cecil County $511,265.80 in exchange for full release and exoneration of the Bonds. (Id. ¶ 27). ASIC then notified Defendants of the payment to Cecil County and demanded that Defendants indemnify ASIC. (Id. ¶ 28). Defendants failed to indemnify ASIC. (Id. ¶ 29).

ASIC initiated this action on November 3, 2016, invoking the Court's diversity jurisdiction.[2] (ECF No. 1). In their original

---

[2] Because this case arises under the Court's diversity jurisdiction, the Court will apply federal procedural law and state substantive law. See Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co., 736 F.3d 255, 261 n.3 (4th Cir. 2013). And because ASIC's claims arose in Maryland, the Court will apply Maryland substantive law. See Nationwide Mut. Ins. Co. v. Welker, 792 F.Supp. 433, 437 (D.Md. 1992) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78

Complaint, ASIC brought only one claim against Defendants: contractual indemnity under the GAIs (the "Indemnity Claim"). (Compl. ¶¶ 33-39, ECF No. 1). On December 16, 2016, Defendants moved to dismiss the Complaint in its entirety, arguing that when the Bankruptcy Court confirmed the Reorganization Plan, it discharged DLM's indemnity obligations. (ECF No. 12-1 at 2). On January 6, 2017, before responding in opposition to Defendants' Motion, ASIC filed a timely First Amended Complaint. (ECF No. 15). In its amended pleading, ASIC removes DLM from the Indemnity Claim and adds a new claim against DLM only for breach of the Agreements (the "Subrogation Claim"). (See ECF No. 15-1). ASIC asserts that it "is equitably subrogated to the rights of Cecil County to assert its rights against DLM for DLM's breaches" of the Agreements. (Am. Compl. ¶ 46).[3]

On February 3, 2017, Defendants filed the present Motion to Dismiss Amended Complaint. (ECF No. 18). ASIC responded on March 3, 2017 (ECF No. 20), and Defendants replied on March 17, 2017 (ECF No. 21).

---

(1938)).
    [3] When a plaintiff files an amended complaint, it generally moots any pending motions to dismiss because the original complaint is superseded. See Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc., 555 U.S. 438, 456 n.4 (2009) ("Normally, an amended complaint supersedes the original complaint."). The Court, therefore, will deny Defendants' first Motion to Dismiss (ECF No. 12) as moot.

## II. DISCUSSION

### A. Standard of Review

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999) (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen,

684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

Generally, a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But a court may consider documents attached to the complaint. See Fed.R.Civ.P. 10(c). If those attached documents conflict with the "bare allegations of the complaint," the attached documents "prevail." Fare Deals Ltd. v. World Choice Travel.Com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001).

**B. Analysis**

DLM advances three main arguments. First, the Court must dismiss the Subrogation Claim because when the Bankruptcy Court

discharged the GAIs, it also discharged the Subrogation Claim. Second, assuming the Subrogation Claim survived DLM's Chapter 11 reorganization, the Court must dismiss the Subrogation Claim insofar as it alleges breach of the Construction Agreement because that claim is barred by the statute of limitations. Third, the Court must dismiss the Amended Complaint to the extent it seeks damages in excess of $375,000 because ASIC attaches a demand letter to its Complaint in which it seeks only that amount. The Court addresses these arguments in turn.

   1. **Whether the Subrogation Claim was Discharged.**

DLM contends that the Bankruptcy Court discharged the Subrogation Claim because the Bankruptcy Court discharged the GAIs and the GAIs encompassed any debts that ASIC could pursue as a subrogee. DLM highlights that the GAIs require DLM to "indemnify and save [ASIC] harmless from and against <u>every claim, demand, liability, cost, charge, suit, judgment and expense</u> which [ASIC] may pay or incur in consequence of having executed, or procured the execution of [the Bonds]." (ECF No. 18-1 at 11 (some emphasis omitted) (quoting ECF No. 1-5 at 2, 7)). DLM characterizes this language as "exceedingly broad," asserting that "it expressly memorialize[s] 'every' conceivable obligation from which DLM might be liable to pay ASIC for sums paid in connection with the [B]onds, whether ASIC asserted those obligations directly or, as is the case here, derivatively as a subrogee." (Id.). DLM reasons that because

8

DLM did not assume the GAIs and the Reorganization Plan provides that all debts and other liabilities not expressly assumed are "fully satisfied, discharged, waived and released," all debts arising from ASIC's right of subrogation are discharged. (Id.) (quoting ECF No. 18-2 at 22).

ASIC disagrees, arguing that the Bankruptcy Court did not discharge the Subrogation Claim because DLM expressly assumed the Agreements and Bonds and ASIC seeks reimbursement based on the liabilities that those instruments create. The Court agrees with ASIC for two principal reasons.

First, ASIC's position is consistent with the holdings of a series of cases stretching across the Fourth, Fifth, and Eleventh Circuits in which district and appellate courts resolved the following analogous issue: If 11 U.S.C. § 523[4] provides that a debt of a principal to an obligee is non-dischargeable, is the surety's right of subrogation to assert a claim against the principal also non-dischargeable? This issue is analogous to the issue ASIC presents here because in both, the central question is the same: When a bankruptcy court does not discharge obligations a principal owes to an obligee, either because a statute proscribes it or the principal assumes the obligations, does the surety retain the right to enforce those obligations as a subrogee against the principal?

---

[4] 11 U.S.C. § 523 provides an extensive list of debts that are

In Gilbert v. United States Fidelity & Guaranty Co., the defendant issued surety bonds on behalf of the plaintiff, the principal, to secure plaintiff's payment of taxes to the State of Georgia, the obligee. 180 F.Supp. 794, 794 (M.D.Ga. 1959), aff'd, 274 F.2d 823 (5th Cir. 1960) (per curiam). When the plaintiff failed to pay his taxes, the defendant paid them on the plaintiff's behalf. Id. at 794-95. Shortly thereafter, the plaintiff received a bankruptcy discharge. Id. at 795. The plaintiff then sued the defendant, seeking a declaration that his bankruptcy discharge barred the defendant from pursuing a subrogation claim for reimbursement of the tax payment. Id. The United States District Court for the Middle District of Georgia held that not only was the plaintiff's tax debt to the State of Georgia non-dischargeable under 11 U.S.C. § 35,[5] but also that the defendant retained the right of subrogation and could pursue, as a subrogee, plaintiff's tax debt as if defendant never paid the State. Id. at 796. The United States Court of Appeals for the Fifth Circuit summarily affirmed. Gilbert, 274 F.2d at 823.

More than two decades later, in Matter of Waite, the United States Court of Appeals for the Fifth Circuit adopted the reasoning in Gilbert, holding that the plaintiff surety was entitled to subrogate itself to the rights of the State of Tennessee, the

---

not discharged in bankruptcy. See 11 U.S.C. § 523 (2012).

obligee, to attempt to collect the defendant's non-dischargeable tax debt for unpaid liquor sales taxes. 698 F.2d 1177, 1178 (11th Cir. 1983). Then, in Matter of Fields, the Fifth Circuit followed Matter of Waite and Gilbert to hold that that the surety, having paid the Bankruptcy Chapter 7 debtor's taxes to the Texas Alcoholic Beverages Commission, the obligee, was entitled to subrogate itself to the State of Texas's right to pursue collection of the non-dischargeable tax debt. 926 F.2d 501, 504-05 (5th Cir. 1991). The Fifth Circuit underscored that at that time, the majority of courts that had addressed the issue of whether a surety's right to pursue collection of non-dischargeable debts as a subrogee survived a bankruptcy discharge had "likewise held that a surety is entitled to subrogation." Id. at 504; id. at 504 n.8 (collecting cases).

Only two years after Matter of Fields, in In re Miller, the United States District Court for the Eastern District of Virginia likewise held that the plaintiff debtor's bankruptcy discharge did not preclude the insurance company, with whom the debtor had an automobile policy, from asserting a subrogation claim against the plaintiff to attempt to recover a debt for causing injury while driving intoxicated. No. 92-3189-S, 1993 WL 13152206, at *3, 4 (E.D.Va. May 24, 1993). The district court concluded that because 11 U.S.C. § 523 excepts from discharge "any debt" arising under that

---

<sup>5</sup> 11 U.S.C. § 35 was the precursor to 11 U.S.C. § 523. See Matter of Waite, 698 F.2d 1177, 1178 (11th Cir. 1983) (describing relationship between § 35 and § 523).

section, neither the debt to the victim of the automobile accident nor the insurance company's subrogation claim was discharged. Id. at *3-4.

The Court acknowledges that not every court that has considered the issue presented in Gilbert, Matter of Waite, Matter of Fields, and In re Miller reached the same conclusion that those courts did. To be sure, in National Collection Agency, Inc. v. Trahan, 624 F.2d 906 (9th Cir. 1980) -- the sole case upon which DLM relies -- the United States Court of Appeals for the Ninth Circuit reached the opposite conclusion.

In Trahan, the plaintiff surety posted a bond with the State of California, the obligee, to secure the defendant's payment of state sales tax. 624 F.2d at 907. The surety satisfied the defendant's state sales tax obligations when the defendant failed to pay. Id. The surety's assignee then brought a subrogation action against the defendant, seeking reimbursement for the tax payment. Id. In response, the defendant petitioned for voluntary bankruptcy and sought a declaration that the debt to the surety was discharged. Id. The bankruptcy court, and later the district court, found that the subrogation claim was, indeed, discharged. Id. On appeal, the Ninth Circuit agreed, holding that although the tax debt to the State of California was non-dischargeable under 11 U.S.C. § 35, the statutory exception to discharge did not extend to the surety's subrogation claim. Id. at 907, 908.

12

The Court finds that DLM's reliance on Trahan is misplaced and unavailing because Trahan is an outlier. When expressly "refus[ing] to follow Trahan," the court in In re Miller highlighted that as of 1993, "[m]ost courts ha[d] distinguished, dismissed or questioned Trahan." In re Miller, 1993 WL 13152206, at *3. And the Court's research shows that since 1993, no court outside the Ninth Circuit has adopted the reasoning in Trahan to rule that a subrogation claim is discharged.[6] Thus, like the In re Miller court -- another district court in the Fourth Circuit -- the Court declines to follow Trahan and will rely instead on Gilbert, Matter of Waite, Matter of Fields, and In re Miller.

The second reason that the Court agrees with ASIC is that when DLM assumed the Agreements, it accepted both the benefits and the burdens of the Agreements. Under 11 U.S.C. § 365(a) (2012), subject to the court's approval, a bankruptcy trustee "may assume or reject any executory contract or unexpired lease of the debtor." Permitting a debtor to assume certain contracts benefits the debtor by "forc[ing] others to continue to do business with it when the bankruptcy filing might otherwise make them reluctant to do so." In re Chateaugay Corp., 10 F.3d 944, 954-55 (2d Cir. 1993) (quoting

---

[6] See, e.g., In re Menna, 16 F.3d 7, 10 n.4 (1st Cir. 1994) (contrasting Matter of Fields with Trahan); In re Richardson, 178 B.R. 19, 24 (Bankr.D.D.C. 1995) (describing Trahan as "much criticized"), aff'd, 193 B.R. 378 (D.D.C. 1995), aff'd sub nom. Richardson v. Old Republic Sur. Co., 107 F.3d 923 (D.C.Cir. 1997); In re Marshall, 302 B.R. 711, 719 (Bankr.D.Kan. 2003) (contrasting Matter of Fields with Trahan).

Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1310 (5th Cir. 1985) (per curiam)) (internal quotation marks omitted). Over six decades ago, the United States Court of Appeals for the Third Circuit explained that the tradeoff for this benefit is that the trustee, on behalf of the debtor, must also accept the burden of the contracts that it elects to assume: "The trustee . . . may not blow hot and cold. If he accepts the contract he accepts it cum onere. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other." In re Italian Cook Oil Corp., 190 F.2d 994, 997 (3d Cir. 1951). Since then, the Third, Fifth, Sixth, Ninth, Tenth, and Eleventh Circuits have all adopted or cited this rule with favor.[7]

Here, having already received the benefit of forcing Cecil County to do business with it, DLM seeks to reject the burden of recognizing ASIC's right of subrogation under the Agreements. The Court cannot countenance this. See In re Italian Cook Oil Corp., 190 F.2d at 997.

Consonant with the holding in the series of analogous cases beginning with Gilbert and the rule from In re Italian Cook Oil

---

[7] See Bank of Am. Nat. Trust & Sav. Ass'n v. Smith, 336 F.2d 528, 529 (9th Cir. 1964); Kirby v. United States, 329 F.2d 735, 737 (10th Cir. 1964); In re Ralston, 401 F.2d 293, 295 (6th Cir. 1968); Schokbeton Indus., Inc. v. Schokbeton Prod. Corp., 466 F.2d 171, 175 (5th Cir. 1972) (referring to the proposition set forth in In re Italian Cook Oil Corp as a "universally recognized rule"); In re Airlift Int'l, Inc., 761 F.2d 1503, 1512 (11th Cir. 1985) (characterizing the proposition set forth in In re Italian Cook Oil

Corp., the Court concludes that Subrogation Claim was not discharged. Accordingly, the Court will deny DLM's Motion to the extent it seeks to dismiss that claim.

**2. Whether the Subrogation Claim is Time-barred.**

DLM argues that the Subrogation Claim for breach of the Construction Agreement is barred by Maryland's three-year statute of limitations because that agreement, which ASIC attaches to the Amended Complaint, provides that "all construction must be completed" by "July 25, 2006." (ECF No. 15-2 at 4). DLM reasons that ASIC did not file this action until November 2016 -- more than seven years after the statute of limitations expired.

ASIC responds that for the Court to grant DLM's motion based on an affirmative defense, like the statute of limitations, the basis for the affirmative defense must be clear on the face of the complaint. ASIC asserts that the face of the Amended Complaint does not clearly show that ASIC failed to sue within the statute of limitations because the Amended Complaint identifies November 24, 2014 as the first date on which ASIC learned that DLM was in breach of the Construction Agreement. (See Am. Compl. ¶ 22). ASIC contends that because it filed this action in November 2016 -- one year before the statute of limitations expired -- the Court must deny DLM's Motion. The Court agrees with ASIC.

---

Corp as "well-settled"); In re Fleming Cos., Inc., 499 F.3d 300, 308 (3d Cir. 2007).

In Maryland, § 5-101 of the Courts and Judicial Proceeding Article ("CJP") of the Maryland Code governs the statute of limitations for breach-of-contract actions. Catholic Univ. of Am. v. Bragunier Masonry Contractors, Inc., 775 A.2d 458, 469 (Md.Ct.Spec.App. 2001), aff'd sub nom. Bragunier Masonry Contractors, Inc. v. Catholic Univ. of Am., 796 A.2d 744 (Md. 2002). CJP § 5-101 provides that "[a] civil action at law shall be filed within three years from the date it accrues." Typically, a breach-of-contract claim accrues "at the time of the breach." Shailendra Kumar, P.A. v. Dhanda, 43 A.3d 1029, 1035 (Md. 2012). But the statute of limitations does not begin to run until the plaintiff knew or reasonably should have known of the breach. See Poffenberger v. Risser, 431 A.2d 677, 680 (Md. 1981) ("[W]e now hold the discovery rule to be applicable generally in all actions and the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong.").

Because the purpose of a Rule 12(b)(6) motion is to test the legal adequacy of a complaint, when resolving a Rule 12(b)(6) motion, the Court "cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). But the Court may grant a Rule 12(b)(6) motion based on an affirmative defense when that defense "clearly appears on the face of the complaint." Richmond, Fredericksburg & Potomac R. Co. v.

Forst, 4 F.3d 244, 250 (4th Cir. 1993) (citation omitted).

Here, the Amended Complaint incorporates the Construction Agreement, (Am. Compl. ¶ 11), and that agreement, which ASIC attaches to the Amended Complaint, (ECF No. 15-2), provides that "all construction must be completed" by "July 25, 2006," (ECF No. 15-2 at 4). Because ASIC was not the party originally tasked with performing the construction work -- DLM was -- the Court cannot conclude that the Construction Agreement alone is clear that ASIC knew or reasonably should have known that DLM was in breach of the agreement on July 25, 2006. And the body of the Amended Complaint contains no allegations making this clear, either. Quite to contrary, the Amended Complaint states that "[o]n or around November 24, 2014, Cecil County provided ASIC notice of DLM's default" under the Construction Agreement. (Am. Compl. ¶ 22). Thus, if the Amended Complaint makes anything clear, it is that the three-year statute of limitations began to run on November 24, 2014 -- the earliest date on which ASIC knew or should have known that DLM was in breach of the Construction Agreement. See Poffenberger, 431 A.2d at 680.

Accordingly, because ASIC filed this action in November 2016 -- one year before the three-year statute of limitations expired -- the Court concludes that it is not clear on the face of the Amended Complaint that the Subrogation Claim is time-barred. The Court, therefore, will deny DLM's Motion to the extent it seeks to dismiss

17

the Subrogation Claim based on the statute of limitations. DLM may pursue its statute-of-limitations argument in a motion for summary judgment.

3.  **Whether the Court Should Limit Damages to $375,000.**

Defendants contend that the Court must dismiss the Amended Complaint to the extent it seeks damages in excess of $375,000 because ASIC attaches a demand letter to its Complaint in which it seeks only that amount -- not the $526,260.78 in the ad damnum clause for the Indemnification Claim, (Am. Compl. ¶ 38), or the $511,265.80 in the ad damnum clause for the Subrogation Claim, (id. ¶ 46). Defendants assert that because the demand letter conflicts with ad damnum clauses, the demand letter controls. ASIC responds that the demand letter does not conflict with the ad damnum clauses because the demand letter does not limit the amount of damages that ASIC may seek in litigation. The Court agrees with ASIC.

As the Court explained above when discussing the standard of review for Rule 12(b)(6) motions, if documents attached to the complaint conflict with the "bare allegations of the complaint," the attached documents "prevail." Fare Deals, 180 F.Supp.2d at 683. Before treating the contents of an attached document as true, however, "the district court should consider the nature of the document and why the plaintiff attached it." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 167 (4th Cir. 2016). "When the plaintiff attaches . . . a document upon which his claim is based, or when the

18

complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." Id. But when "the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." Id.

As Exhibit 8 to its Original Complaint, ASIC attached a July 21, 2015 demand letter in which it demanded reimbursement "in the amount of $375,000, representing [ASIC's] losses as a result of having issued the Bonds." (ECF No. 1-8 at 3). The Court agrees with ASIC that this demand letter does not conflict with the ad damnum clauses in the Amended Complaint because the demand letter expressly states that "nothing contained herein shall be deemed a waiver of [ASIC's] rights and remedies, all of which are hereby reserved." (Id.) (emphasis added). By including this proviso, ASIC implied that if it resorted to litigation, it might pursue damages in an amount other than $375,000. Because the Court finds that there is no conflict between the demand letter and the ad damnum clauses, there is no legal basis for the Court to credit the $375,000 in the demand letter over the $526,260.78 and the $511,265.80 in the ad damnum clauses. See Fare Deals, 180 F.Supp.2d at 683 ("When the bare allegations of the complaint conflict with any exhibits or other documents, whether attached or adopted by reference, the exhibits or documents prevail." (emphasis added)

(citing Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991))).

And, even assuming the demand letter conflicts with the ad damnum clauses, Defendants acknowledge that ASIC "obviously included the demand letter as part of its amended complaint to demonstrate that it satisfied its obligation of having made demand for payment under the bonds." (ECF No. 18-1 at 14). Thus, because ASIC attaches the demand letter for purposes other than the truthfulness of the amount of damages -- i.e., to demonstrate that it made demand for payment -- the Court cannot accept as true that ASIC is only seeking $375,000 in damages. See Goines, 822 F.3d at 167. The Court, therefore, will deny Defendants' Motion to the degree that they argue that the Court must limit ASIC's potential recovery to no more than $375,000.

### III. CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion to Dismiss Amended Complaint (ECF No. 18) and deny as moot Defendants' Motion to Dismiss the Complaint (ECF No. 12). A separate Order follows.

Entered this 10th day of July, 2017

/s/
_____
George L. Russell, III
United States District Judge